# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **SEACHANGE PROJECTS LLC** | : | **CIVIL ACTION** |
| 2835 El Prado Boulevard | : | |
| Miami, FL  33133-6442, | : | NO. |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

For its Complaint against Defendant United States of America ("USA"), acting by and through the Department of the Navy's Military Sealift Command ("MSC"), Plaintiff SeaChange Projects LLC ("SeaChange"), through its undersigned counsel, herewith alleges as follows:

1. This is an action under the Contract Disputes Act ("CDA"), 41 USC §§7101-7109, and the Suits in Admiralty Act ("SIAA"), 46 USCA §30901, *et seq.*, pertaining to the improper default termination and consequent breach by Defendant of a contract for ocean transportation services existing between Defendant and Plaintiff SeaChange.

## PARTIES

2. Plaintiff SeaChange is a Delaware Limited Liability Company, with its principal place of business located in Miami, FL.  Plaintiff is and has at all relevant times been in the business of providing ocean transportation and related marine services.  Plaintiff is the owner of the Motor Vessel CAPTAIN DAVID I LYON (ex- M/V/POSITANO) (the "Vessel").

3.      The MSC is an instrumentality of the government of the Defendant United States of America, a sovereign nation which has consented to be sued under both the CDA and the SIAA.

## JURISDICTION AND VENUE

4.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 USC §1333, as this action pertains to the breach of a maritime contact; the Suits in Admiralty Act, 46 USCA §30901, *et seq.*, by which act Defendant USA has waived its sovereign immunity; and the CDA, 41 USC §7102, as this matter pertains to a contractual dispute between the parties.

6.      Venue is proper in this Court per 46 USCA §30906 in that Plaintiff is a corporation formed under Delaware law and is therefore resident in this District.

## RELIEF SOUGHT

7.      Based upon the allegations below and the relevant law, Plaintiff seeks the Court's declaratory judgment that:

   a. Under the factual circumstances and terms of the below-identified Contract, a Termination for Default was unwarranted, wrongful and improper;

   b. By issuing a wrongful and unjustified Termination for Default, MSC breached the Contract;

   c. By failing to cooperate and assist Plaintiff to obtain interim relief pending issuance of the necessary Facility Security Clearance, MSC breached its legal duty of good faith and fair dealing;

    d. By failing to cooperate and assist Plaintiff to obtain interim relief pending issuance of the necessary Facility Security Clearance, MSC breached its legal duty to cooperate with its contractor;

    e. By threatening to terminate the contract for default unless Plaintiff sell its Vessel in order to novate the contract to another contractor, MSC operated in bad faith;

    f. By terminating Plaintiff's contract after admitting that Plaintiff acted with diligence in obtaining a Facility Security Clearance, and with full knowledge that such termination would cause Plaintiff significant and oppressive damages, MSC operated in bad faith;

    g. The unilateral termination of the Contract by MSC, if not retracted, is converted to a Termination for Convenience under the terms of the Contract; and

    h. The behavior of MSC and its position in this dispute is so unjustifiable as to make appropriate an award of costs and attorneys fees to Plaintiff.

## **FACTS**

8. In response to a solicitation issued by the Defendant's Military Sealift Command, Plaintiff SeaChange bid upon and, on 27 March 2014, was awarded contract N0033-14-C-3300 (the "Contract"). A copy of the Contract is attached as "Exhibit A".

9. In essential part, the Contract required SeaChange to provide and the MSC to pay for the operation of a vessel for the transportation and prepositioning of certain military cargo owned or provided by the United States of America. Such vessel hire arrangements are called Time Charters.

10. Under the Contract, SeaChange had to obtain a SECRET level Facility Clearance (known as an "FCL") and four officers on the Vessel had to have SECRET level personal security clearances. Security clearances are required because certain communications between the United States Navy and the Vessel's Master pertaining to the Vessel's operations are classified.

11. The requisite security clearances were not required to be obtained prior to award of the Contract as a condition to submitting a bid. In fact, SeaChange could not initiate the process for obtaining an FCL prior to having been awarded the Contract because any application for such clearance requires a sponsor, such as MSC, which must initiate the process under the aegis of an issued contract.

12. Upon Contract award, SeaChange hired four merchant marine officers to man the Vessel, each of whom had and has the requisite SECRET level personal security clearance, and made an immediate application for an FCL to the Defense Security Service ("DSS"), the federal agency which reviews and processes such applications.

13. There can be no dispute that following the award of the Contract, SeaChange submitted its request for clearance to DSS in a timely manner, fully complied with all requests for information made by DSS, and fully cooperated with the processing of the FCL application. This has been admitted by MSC's Contracting Officer and Security Officer.

14. During DSS's review of the request for clearance, SeaChange, in reliance upon the Contract and at substantial expense exceeding $10,000,000, procured, converted and prepared the ocean going vessel M/V POSITANO (subsequently renamed the CAPTAIN DAVID I LYON), with which the specified ocean transportation services could be performed.

15. On 8 August 2014, in fulfillment of its responsibilities under the Contract, Plaintiff SeaChange delivered the Vessel at a port and place specified by MSC for performance of ocean transportation services. At that time and place, the Vessel was in all respects properly manned, equipped, seaworthy and prepared for performance of the ocean transportation services required by the Contract.

16. In addition to the substantial expense associated with procuring, converting and outfitting the Vessel, Plaintiff SeaChange incurred substantial additional expenses associated with delivering the Vessel to the port and place and on the date specified by MSC, the aggregate of which was approximately $5,000,000, including crew wages and the costs of a special survey, fuel, pilots, tugboats, agents and the like.

17. Despite all due diligence and extraordinary effort by SeaChange, and after expending approximately $15,000,000 to meet MSC's requirements, on or about 22 August 2014, MSC and DSS informed SeaChange for the first time (four months after SeaChange submitted its request for clearance and after the Vessel had been fully loaded with cargo) that in order to obtain the requisite FCL SeaChange must enter into a Special Security Agreement ("SSA") with DSS. SeaChange did not object to implementation of an SSA, but was advised by DSS that the process can take a number of months to complete.

18. On the same day SeaChange was first informed of the SSA requirement, MSC also issued to SeaChange a "Show Cause Notice" in the form attached hereto as Exhibit B. The Show Cause Notice demanded that SeaChange provide a plan of action to obtain an FCL, even though issuance of a security clearance was outside of SeaChange's control and solely within the control of the United States government.

19.     SeaChange understood that if the Vessel was to sail to its destination on MSC's prescribed schedule, temporary relief would be necessary.  Thus, between 22 August 2014 and 9 September 2014, SeaChange proposed numerous alternatives to MSC for an interim solution to allow the CAPTAIN DAVID I LYON to immediately embark on its voyage pending SeaChange's implementation of an SSA acceptable to DSS and DSS's issuance of an FCL to SeaChange.  SeaChange offered to provide MSC with any and all assurances, contractual commitments or indemnifications required to mitigate any concerns. MSC unreasonably rejected each and every interim measure proposed by SeaChange. At no point did MSC suggest alternate solutions with SeaChange or suggest ways in which SeaChange might modify any of its proposed mitigation plans to allow for temporary relief while SeaChange implemented the SSA.

20.     Long before DSS announced that SeaChange would have to implement an SSA, SeaChange alerted MSC that obtaining an FCL appeared to be taking longer than the parties had anticipated and that if MSC required SeaChange to have an FCL prior to the departure of the Vessel to its destination, Seachange could rely on the FCL possessed by the subcontractor that was providing the unlicensed crew members.  Despite the fact that MSC was SeaChange's sponsor for the FCL, and knowing that a security clearance would be required prior to Vessel departure, MSC failed to contact DSS and ascertain if that arrangement would be acceptable. Rather, it was not until DSS informed MSC and SeaChange that an SSA was required did MSC ever raise the issue with DSS.

21.     MSC alone was able to mitigate delays related to issuance of the requisite security clearance, failed to do so, and failed to remedy the situation or otherwise act in good faith and fair dealing with respect to the issue.  Indeed, MSC demanded that to avoid a default SeaChange immediately agree to sell the Vessel and novate (i.e., assign) the Contract to another contractor.

Simultaneously, MSC was engaged in direct communications with potential buyers of the Vessel, communications which made the potential sale of the Vessel at a fair market price impossible.

22. On 9 September 2014, after rejection of every interim measure proposed by SeaChange, MSC issued a notice of default termination, a copy of which is attached hereto as "Exhibit C". The sole instance of "default" cited by MSC in the notice was the alleged failure by SeaChange to procure the needed security clearance.

23. Plaintiff SeaChange performed and fulfilled all of its obligations under the Contract within its power and control.

24. The failure to obtain the necessary security clearance was in no way the fault or responsibility of SeaChange and constitutes an excusable delay.

25. MSC unreasonably terminated SeaChange's Contract, allegedly for "default", failed to negotiate with SeaChange in good faith consistent with its obligation of non-interference and cooperation, and acted in bad faith by demanding that SeaChange sell the Vessel and novate the contract to another contractor in order to avoid the default termination.

## COUNT I – WRONGFUL TERMINATION

26. Plaintiff SeaChange herewith incorporates all allegations of paragraphs 1 through 25 above as if fully set forth herein.

27. In light of the Contract terms and of all the circumstances set forth above, specifically Plaintiff's fulsome cooperation with all relevant agencies and officials of the United States of America in attempting to secure the requisite FCL, the complete control by the United States of America of the process of issuance of said FCL, and the total compliance by Plaintiff in otherwise performing under the Contract, MSC was totally unjustified in issuing a Termination of the Contract for Default.

143205.06502/22335948v.1

28.     By issuing an unjustifiable Termination for Default, MSC, and therefore Defendant USA, breached the Contract.

29.     Plaintiff SeaChange is entitled to a declaration by this Court that the Termination for Default was wrongful, unjustified and constituted a breach of the Contract.  Plaintiff is further entitled to a declaration from the Court that the termination by MSC was actually a Termination for Convenience under the Contract, for which Defendant USA is liable for all consequences and damages suffered by Plaintiff thereby.

### COUNT II – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

30.     Plaintiff SeaChange herewith incorporates the allegations of paragraphs 1 through 25 above as if fully set forth herein.

31.     The United States of America, by its officers, employees and agencies, at all relevant times had full control over the process by which the FCL required by the Contract is to be issued.

32.     MSC also had numerous means by which alternative solutions to the FCL problem could be resolved, namely the issuance of a Limited FCL, the waiver of the FCL requirement, or the acceptance of SeaChange's proposal for the temporary substitution of its subcontractor's FCL.

33.     MSC refused and failed to consider and implement any of the possible alternatives and remedies, failed to communicate with DSS when it knew that temporary remedial measures may be required and instead terminated the Contract for default even though SeaChange had no control or ability to control issuance of the FCL.

34.     In so doing, MSC, and therefore Defendant USA, breached its legal obligation to act in good faith and fairly deal with its contracting partner.

35. MSC, and therefore Defendant USA, is liable and responsible for all of the consequences of said breach, including damages suffered by Plaintiff.

## COUNT III – BREACH OF DUTY TO COOPERATE

36. Plaintiff SeaChange herewith incorporates the allegations of paragraphs 1 through 25 above as if fully set forth herein.

37. The United States of America, by its officers, employees and agencies, at all relevant times had full control over the process by which the FCL required by the Contract is to be issued.

38. MSC had numerous means by which alternative solutions to the FCL problem could be resolved, namely the issuance of a Limited FCL, the waiver of the FCL requirement, or the acceptance of SeaChange's proposal for the temporary substitution of its subcontractor's FCL.

39. MSC refused and failed to consider and implement any of the possible alternatives and remedies, and instead terminated the Contract for default even though SeaChange had no control or ability to control issuance of the FCL.

40. In so doing, MSC, and therefore Defendant USA, breached its legal obligation to cooperate in the performance of the Contract.

41. MSC, and therefore Defendant USA, is liable and responsible for all of the consequences of said breach, including damages suffered by Plaintiff.

## COUNT IV– BAD FAITH

42. Plaintiff SeaChange herewith incorporates the allegations of paragraphs 1 through 25 above as if fully set forth herein.

43. The United States of America, by its officers, employees and agencies, at all relevant times had full control over the process by which the FCL required by the Contract is to be issued.

44. MSC had numerous means by which alternative solutions to the FCL problem could be solved, namely the issuance of a Limited FCL, the waiver of the FCL requirement, or the acceptance of SeaChange's proposal for the temporary substitution of its subcontractor's FCL.

45. MSC refused and failed to consider and implement any of the possible alternatives and remedies, demanding instead that SeaChange sell the Vessel and novate the Contract to another contractor, all the while conducting negotiations with other contractors making any such sale financially unfeasible.

46. MSC terminated Plaintiff's contract after admitting that Plaintiff had acted with diligence in obtaining a Facility Security Clearance, and with full knowledge that such termination would cause Plaintiff significant and oppressive damages.

47. In so doing, MSC acted in bad faith.

48. MSC, and therefore Defendant USA, is liable and responsible for all of the consequences of said breach, including damages suffered by Plaintiff.

WHEREFORE, SeaChange Projects LLC requests the entry of Declaratory Judgment in its favor finding that (1) the termination of the Contract by Defendant MSC for alleged default was wrongful; (2) the termination should be treated as a Termination for Convenience; (3) the wrongful Termination for Default was a material breach of the Contract; and (4) Plaintiff SeaChange Projects LLC has no liability to Defendant under the Contract. Plaintiff further requests entry of an order forcing Defendant MSC to pay to Plaintiff all costs of suit, including

reasonable attorneys' fees, together with all other manner of relief deemed to be just in the premises.

Dated:  September 12, 2014

                              BLANK ROME LLP

                              BY:    */s/Steven L. Caponi*
                                        Steven L. Caponi (DE No. 3484)
                                        Adam V. Orlacchio (DE No. 5520)
                                        1201 Market Street, Suite 800
                                        Wilmington, DE  19801
                                        (302) 425-6400
                                        caponi@blankrome.com
                                        orlacchio@blankrome.com