### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEACHANGE PROJECTS LLC | ) | |
| 2835 El Prado Boulevard | ) | |
| Miami, FL 33133-6442 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14-CV-01186-GMS |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |

### THE UNITED STATES' ANSWER TO PLAINTIFF'S
### SECOND AMENDED COMPLAINT AND COUNTERCLAIM

Defendant United States of America respectfully submits this Answer to Plaintiff's Second Amended Complaint and asserts a counterclaim.  The United States responds specifically to each numbered paragraph of the Second Amended Complaint by admitting, denying, and averring as follows:

1.      The allegations contained in Paragraph 1 state legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

### PARTIES

2.      The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and, therefore denies the allegations.

3.      The United States admits that it is a sovereign nation which has consented to be sued in specific circumstances under the Contract Disputes Act (CDA), 41 U.S.C. §

§ 7101-7109 and the Suits in Admiralty Act (SIAA), 46 U.S.C.A. § 30901-30918, and

that the Military Sealift Command is an organization within the United States Navy.

## JURISDICTION AND VENUE

4.     The allegations contained in Paragraph 4 state legal conclusions to which

no response is required.  To the extent a response is required, the allegations are denied.

5.     The allegations contained in Paragraph 5 state legal conclusions to which

no response is required.  To the extent a response is required, the United States admits

only that this Court has jurisdiction under the CDA over the Military Sealift Command

(MSC) and SeaChange Property LLC (SeaChange), as they were the sole parties to the

contract at issue in this lawsuit.  By way of further response, this Court only has subject

matter jurisdiction over Plaintiff's claims of which it exhausted the CDA's

administrative remedies.  The remaining allegations in Paragraph 5 are denied.

6.     The allegations contained in Paragraph 6 state legal conclusions to which

no response is required.  To the extent a response is required, the allegations are denied.

## RELIEF SOUGHT

7.     The United States denies the allegations contained in Paragraph 7 and its

subparts a through k.  By way of further response, the United States avers that this

Court lacks subject matter jurisdiction over all of Plaintiff's claims other than those

raised against MSC, as MSC and SeaChange were the sole parties to the contract at

issue in this lawsuit.  Responding further, this Court also lacks jurisdiction over all of

Plaintiff's claims that were not presented to the agency for final determination in

accordance with the CDA.

2

8.      The allegations contained in Paragraph 8 state legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

9.      The allegations contained in Paragraph 9 state legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

## FACTS

10.     The United States admits the allegations in Paragraph 10, but avers that the contract submitted as Exhibit A is a copy of contract N00033-14-C-3300 (the "Contract") prior to all modifications.

11.     Admitted.

12.     The United States admits that the Contract required SeaChange to obtain a Secret level Facility Security Clearance ("FCL") granted by the Defense Security Service (DSS).  The remaining allegations contained in Paragraph 12 are denied as stated.  By way of further response, the United States avers that the Contract required Secret level clearances for not only the Master, Chief Mate, Chief Engineer, and, at a minimum, one additional officer of the M/V CAPTAIN DAVID I LYON (the Vessel), but also for SeaChange's corporate officers.  The United States further avers that classified communications were only one reason that the Contract required security clearances.

13.     The allegations contained in Paragraph 13 are denied as stated.  By way of further response, the United States avers that DSS could not process SeaChange's FCL until it had a contract award with a FCL requirement and was sponsored by a United States agency, in this case MSC.

3

14.     Admitted.

15.     Admitted.

16.     The allegations contained in Paragraph 16 are denied.  By way of further response, the United States avers that Section L-10 gave the Contracting Officer discretion to cancel the Contract, at no cost to the United States, after SeaChange failed to obtain its FCL within 60 days of the Contract being awarded.

17.     The allegations contained in Paragraph 17 are denied as stated.  By way of further response, the United States avers that DSS could not process SeaChange's FCL until it had a contract award with a FCL requirement and was sponsored by a United States agency, in this case MSC.

18.     The allegations contained in Paragraph 18 are denied.  By way of further response, the United States avers that any delay in submitting the initial FCL documentation to DSS was caused by SeaChange providing incorrect and improper information, such as an unauthorized point of contact and the wrong address for its place of business.

19.     The United States admits only that MSC submitted its sponsorship letter for SeaChange to DSS on April 15, 2014.  By way of further response, the United States avers that any delay in submitting the initial FCL documentation to DSS were caused by SeaChange providing incorrect and improper information, such as an unauthorized point of contact and the wrong address for its place of business.

20.     The allegations contained in Paragraph 20 are denied.  By way of further response, the United States avers that any delay in the initial processing of SeaChange's

FCL by DSS was caused by SeaChange not responding to DSS inquires and providing incorrect and improper information, such as an unauthorized point of contact and a foreign address for its place of business.

21.     The allegations contained in Paragraph 21 are denied as stated.  By way of further response, the United States avers that the Contract as awarded required SeaChange to deliver the Vessel to MSC no later than June 15, 2014.  Responding further, the United States avers that SeaChange representatives attended a Kick-Off Meeting held at MSC on April 8, 2014, and SeaChange's security clearance was one topic discussed at that meeting.   The United States denies the remaining allegations insofar as they are not accurate.  By way of further response, at the Kick-Off meeting SeaChange orally assured MSC representatives that they expected no issues with the FCL process and could use sub-contractor cleared personnel to satisfy the cleared officer requirement in the contract.

22.     The allegations contained in Paragraph 22 are denied.

23.     The allegations contained in Paragraph 23 are admitted in part and denied in part.  It is admitted that the MSC Contracting Officer advised SeaChange that it had complied with the DSS clearance review process in a timely manner.  The United States lacks information to aver or deny whether such assertions were made by DSS or MSC's Security Manager, therefore those allegations are denied.  By way of further response, the United States avers that DSS informed MSC that SeaChange cooperated with the processing of the FCL request in a timely manner.  However, DSS also informed MSC that the information submitted by SeaChange did not mitigate its Foreign Ownership,

Control, or Influence (FOCI) issues. The remaining allegations contained in Paragraph 23 are denied.

24. The allegations in Paragraph 24 are denied. By way of further response, the United States avers that SeaChange knew or should have known of potential FOCI issues when it submitted an organizational chart in its initial application to DSS showing SeaChange was managed, and partially owned by foreign interests. SeaChange also knew prior to the Contract's award that it was required to have a FCL and assured MSC prior to the award it anticipated no issues with being granted a FCL by DSS. The United States avers further that MSC informed SeaChange of the FOCI concerns raised by DSS to MSC.

25. The United States admits that the Contract required SeaChange to obtain a FCL. The remaining allegations in Paragraph 25 are denied as stated.

26. The allegations contained in Paragraph 26 are denied.

27. The allegations contained in Paragraph 27 are denied.

28. The allegations contained in Paragraph 28 are denied. By way of further response, the United States avers that SeaChange was never able to mitigate the FOCI issues raised by DSS up to the time the contract was terminated by MSC for default.

29. The allegations contained in Paragraph 29 are denied.

30. The allegations contained in Paragraph 30 are denied.

31. The allegations contained in Paragraph 31 are denied as stated. By way of further response, the United States admits that in order for SeaChange to meet certain requirements under the Contract, it procured the Vessel, reflagged it to the United

States, and installed equipment on the Vessel.

32.     The allegations contained in Paragraph 32 are admitted in part and denied in part.  It is admitted that SeaChange, at DSS' guidance, made certain proposed changes to its management structure and financial interests as a way to mitigate FOCI. It is denied that such proposals or steps sufficiently mitigated the FOCI issues so that DSS could grant SeaChange a FCL. The remaining allegations in Paragraph 32 are denied.

33.     The allegations contained in Paragraph 33 are denied.

34.     The allegations contained in Paragraph 34 are admitted insofar as the Vessel was accepted, conditionally, by MSC on August 8, 2014.  The United States denies that SeaChange fulfilled its contractual obligations because it still had not been granted a FCL by DSS.  The remaining allegations in Paragraph 34 are denied.

35.     The United States admits only that the Vessel was loaded with military cargo between August 8, 2014 and August 22, 2014.  The remaining allegations in Paragraph 35 are denied.

36.     The allegations in Paragraph 36 are denied as stated.  By way of further response, the United States admits that SeaChange was required by DSS to obtain a Special Security Agreement ("SSA"), and that DSS advised both MSC and SeaChange the SSA would have taken months to process.

37.     The allegations contained in Paragraph 37 state legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied. By way of further response, the United States avers that under the CDA, for which this

case has been brought, the Court has no subject matter jurisdiction over DSS.

38.     The allegations in Paragraph 38 are denied as stated.  By way of further response, the United States admits that MSC issued a "Show Cause Notice" to SeaChange on August 22, 2014, and that the notice directed SeaChange to provide a plan of action for timely performance of the Contract.  The MSC "Show Cause Notice" is attached to Plaintiff's Second Amended Complaint as Exhibit B.

39.     The allegations in Paragraph 39 are denied.  By way of further response, only DSS, not MSC, has the authority to issue a FCL.  Answering further, SeaChange's proposed plan to utilize its subcontractor's security clearance would not have ameliorated the FOCI concerns.

40.     The allegations in Paragraph 40 are denied.  By way of further response, only DSS, not MSC, has the authority to issue a FCL.  Answering further, SeaChange's proposed plan to utilize its subcontractor's security clearance would not have ameliorated the FOCI concerns.

41.     The allegations in Paragraph 41 are denied as stated.  By way of further response, the United States avers that both MSC and SeaChange proposed potential solutions to SeaChange's inability to obtain the contractually required FCL in time to perform the Contract.  The proposals offered by SeaChange were either rejected by MSC or would not ameliorate the FOCI issues with DSS in time to meet the sail date.

42.     The allegations in Paragraph 42 are denied as stated.  By way of further response, the United States avers that both MSC and SeaChange proposed potential solutions to SeaChange's inability to obtain the contractually required FCL in time to

perform the Contract.  The proposals offered by SeaChange were either rejected by MSC or would not ameliorate the FOCI issues with DSS in time to meet the sail date.

43.     The allegations contained in Paragraph 43 are denied.

44.     The United States admits that MSC issued a notice of Termination for Default to SeaChange on September 9, 2014.  The remaining allegations in Paragraph 44 are denied.

45.     The allegations contained in Paragraph 45 are denied.

46.     The allegations contained in Paragraph 46 are denied.

47.     The allegations contained in Paragraph 47 state legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

48.     The United States admits that SeaChange submitted to MSC the claim attached to Plaintiff's Second Amended Complaint as Exhibit D.  All remaining allegations contained in Paragraph 48 are denied.

49.     The United States admits that SeaChange submitted to MSC the claim attached to Plaintiff's Second Amended Complaint as Exhibit E.  All remaining allegations contained in Paragraph 49 are denied.

50.     The allegations contained in Paragraph 50 are denied.  By way of further response, the United States avers that the Contracting Officer returned SeaChange's December 11, 2014 claim without action, as shown in the letter from MSC attached to Plaintiff's Second Amended Complaint as Exhibit F.

51.     The United States admits that the Contracting Officer issued the Final Decision attached to Plaintiff's Second Amended Complaint as Exhibit G.  All

remaining allegations contained in Paragraph 51 are denied.

52.     The United States admits that the Contracting Officer issued the Final

Decision attached to Plaintiff's Second Amended Complaint as Exhibit H.  All

remaining allegations contained in Paragraph 52 are denied.

53.     The allegations in Paragraph 53 are admitted.

54.     The allegations in in Paragraph 54 are admitted.

55.     The United States denies the allegations raised in the third certified claim,

but the allegations concerning its submittal in Paragraph 55 are admitted.

56.     The allegations in Paragraph 56 are admitted.

## <u>COUNT I – WRONGFUL TERMINATION</u>

57.     The United States reaffirms its responses to all allegations in Paragraphs 1

through 56 of the Answer as though fully set forth herein.

58.     The allegations contained in Paragraph 58 are denied.

59.     The allegations contained in Paragraph 59 are denied.

60.     The allegations contained in Paragraph 60 are denied.

61.     The allegations contained in Paragraph 61 are denied.

62.     The allegations contained in Paragraph 62 are denied.

## <u>COUNT II – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING</u>

63.     The United States reaffirms its responses to all allegations in Paragraphs 1

through 62 of the Answer as though fully set forth herein.

64.      The allegations contained in Paragraph 64 are denied as stated.  By way of

further response, the United States avers that DSS is the agency within the Department of

Defense that issues FCLs.  Answering further, MSC, the only party to the Contract with SeaChange, did not have control or authority over DSS to issue a FCL.

65.     The allegations contained in Paragraph 65 are denied.

66.     The allegations contained in Paragraph 66 are denied.

67.     The allegations contained in Paragraph 67 are denied.

68.     The allegations contained in Paragraph 68 are denied.

69.     The allegations contained in Paragraph 69 are denied.

70.     The allegations contained in Paragraph 70 are denied.

## COUNT III – BREACH OF DUTY TO COOPERATE

71.     The United States reaffirms its responses to all allegations in Paragraphs 1 through 70 of the Answer as though fully set forth herein.

72.     The allegations contained in Paragraph 72 are denied as stated.  By way of further response, the United States avers that DSS is the agency within the Department of Defense that issues FCLs.  Answering further, MSC, the only party to the Contract with SeaChange, did not have control or authority over DSS to issue a FCL.

73.     The allegations contained in Paragraph 73 are denied.

74.     The allegations contained in Paragraph 74 are denied.

75.     The allegations contained in Paragraph 75 are denied.

76.     The allegations contained in Paragraph 76 are denied.

77.     The allegations contained in Paragraph 77 are denied.

78.     The allegations contained in Paragraph 78 are denied.

11

## COUNT IV – BAD FAITH

79.     The United States reaffirms its responses to all allegations in Paragraphs 1 through 78 of the Answer as though set forth herein.

80.     The allegations contained in Paragraph 80 are denied as stated.  By way of further response, the United States avers that DSS is the agency within the Department of Defense that issues FCLs.  Answering further, MSC, the only party to the Contract with SeaChange, did not have control or authority over DSS to issue a FCL.

81.     The allegations contained in Paragraph 81 are denied.

82.     The allegations contained in Paragraph 82 are denied.

83.     The allegations contained in Paragraph 83 are denied.

84.     The allegations contained in Paragraph 84 are denied.

85.     The allegations contained in Paragraph 85 are denied.

86.     The allegations contained in Paragraph 86 are denied.

87.     The allegations contained in Paragraph 87 are denied.

## COUNT V– FRAUDULENT INDUCEMENT/DETRIMENTAL RELIANCE

88.     The United States reaffirms its responses to all allegations in Paragraphs 1 through 87 of the Answer as though set forth herein.

89.     The allegations contained in Paragraph 89 are denied as stated.  By way of further response, the United States avers that DSS is the agency within the Department of Defense that issues FCLs.  Answering further, MSC, the only party to the Contract with SeaChange, did not have control or authority over DSS to issue a FCL.

90.     The allegations contained in Paragraph 90 are denied.

91.     The allegations contained in Paragraph 91 are denied.

92.     The allegations contained in Paragraph 92 are denied.

93.     The allegations contained in Paragraph 93 are denied.

94.     The allegations contained in Paragraph 94 are denied.

95.     The allegations contained in Paragraph 95 are denied.

96.     The allegations contained in Paragraph 96 are denied.

97.     The allegations contained in Paragraph 97 are denied.

### COUNT VI– WAIVER/EQUITABLE ESTOPPEL

98.     The United States reaffirms its responses to all allegations in Paragraphs 1 through 97 of the Answer as though set forth herein.

99.     The allegations contained in Paragraph 99 are denied as stated.  By way of further response, the United States avers that the Contract gave the Contracting Officer discretion to cancel the Contract, at no cost to the United States, after SeaChange failed to obtain its FCL within 60 days of the Contract being awarded.

100.    The allegations contained in Paragraph 100 are denied.

101.    The allegations contained in Paragraph 101 are denied.

102.    The allegations contained in Paragraph 102 are denied.

103.    The allegations contained in Paragraph 103 are denied.

104.    The allegations contained in Paragraph 104 are denied.

105.    The allegations contained in Paragraph 105 are denied.

106.    The allegations contained in Paragraph 106 are denied.

107.    The allegations contained in Paragraph 107 are denied.

## COUNT VII– QUANTUM MERUIT/UNJUST ENRICHMENT

108.    The United States reaffirms its responses to all allegations in Paragraphs 1 through 107 of the Answer as though set forth herein.

109.     The allegations contained in Paragraph 109 are denied as stated.  By way of further response, the United States avers that the Contract gave the Contracting Officer discretion to cancel the Contract, at no cost to the United States, after SeaChange failed to obtain its FCL within 60 days of the Contract being awarded.

110.    The allegations contained in Paragraph 110 are denied.

111.    The allegations contained in Paragraph 111 are denied.

112.    The allegations contained in Paragraph 112 are denied.

113.    The allegations contained in Paragraph 113 are denied.

114.    The allegations contained in Paragraph 114 are denied.

115.    The allegations contained in Paragraph 115 are denied.

116.    The allegations contained in Paragraph 116 are denied.

117.    The allegations contained in Paragraph 117 are denied.

The allegations of the Plaintiff's WHEREFORE clause are denied.

## AFFIRMATIVE AND OTHER DEFENSES

1.    Plaintiff's Second Amended Complaint lacks subject matter jurisdiction under the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101-7109 (2011) and Suits in Admiralty Act ("SIAA"), 46 U.S.C. §§ 30901-30918 (2006), over all claims asserted against any United States agency other than the Military Sealift Command (MSC).

2.    Count V of Plaintiff's Second Amended Complaint is barred by lack of

14

subject matter jurisdiction under the CDA and SIAA.

3.      Count VI of Plaintiff's Second Amended Complaint is barred by lack of

subject matter jurisdiction under the CDA and SIAA.

4.      Plaintiff's alleged damages for costs and attorney's fees are barred by lack

of subject matter jurisdiction under the CDA and SIAA.

5.      Plaintiff SeaChange fails to state a claim for which relief can be granted.

6.      If Plaintiff SeaChange was injured as alleged, which is not admitted but is

specifically denied, the United States is entitled to set-offs and reimbursements for costs

incurred as a result of SeaChange's breach of the Contract.

7.      Plaintiff SeaChange failed to mitigate its damages.

Defendant United States prays that Plaintiff SeaChange's Second Amended

Complaint be dismissed with prejudice, at Plaintiff's cost, and that the Court grant

such further relief as the Court deems just and proper.

## UNITED STATES' COUNTERCLAIM

The United States brings this action against Counter-Defendant SeaChange

Projects LLC (SeaChange), and alleges as follows:

## PARTIES

1.      Counter-Plaintiff, United States of America, is a sovereign nation

authorized to sue by 28 U.S.C. § 1345.  The Military Sealift Command (MSC) is an

agency of the United States.

2.      Upon information and belief, Counter-Defendant SeaChange is a limited

liability company incorporated under the laws of the State of Delaware, with its principle

place of business located in Miami, Florida.  At all material times, Counter-Defendant was, and remains, a corporation engaged in business of providing ocean transportation and related marine services.

3.      At all material times, Counter-Defendant was the owner of the M/V CAPT DAVID I LYON (formerly the M/V POSITANO) (the Vessel).

## JURISDICTION AND VENUE

4.      This counterclaim is an admiralty claim within the meaning of Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333(1) (giving district courts original jurisdiction of admiralty or maritime cases).

5.      The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1333, 1345, the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, and the Suits in Admiralty Act (SIAA), 46 U.S.C. §§ 30901-30918.

6.      Venue in the United States District Court for the District of Delaware is proper pursuant to 46 U.S.C.A. §30906.

## FACTS

7.      On March 27, 2014, the United States, through its agency MSC, awarded Counter-Defendant SeaChange contract N0033-14-C-3300 (the Contract).  A copy of the contract, as modified, is attached as Exhibit A.

8.      The Defense Security Service (DSS) was not a party to the Contract.

9.      The Contract required SeaChange to provide oceangoing transportation and prepositioning of United States Air Force cargo in return for payment by the United States.

16

10.     The Contract set forth specific performance requirements for SeaChange

and the Vessel:

> C-3.1. Planning. The Vessel is to be employed in worldwide trade for the transportation and/or prepositioning of cargo (including but not limited to hazardous cargos, explosives, ammunition, vehicular, containerized and general cargos); and for military readiness in accordance with the terms of this Charter.
>
> C-3.2. Prepositioning Location. For planning purposes, Guam is the current prepositioning location for the Vessel; however, Diego Garcia and Korea may also, without guarantee, be considered prepositioning locations of the vessel.   Actual prepositioning location assigned by the Charterer may vary.
>
> C-3.2.1. Operational Tempo (OPTEMPO). It is estimated, without guarantee, that the Vessel will be at anchor 80% of the Charter period and underway 20% of the Charter period while on-station, not including prepositioning time to and from the deployment area (estimate 30 days each way, total 60 days). The operating tempo may vary. The Vessel shall be capable of deployment to worldwide locations within 24 hours of notification by the Operational Commander designated by the U.S. Navy.

11.     The Contract also required Counter-Defendant SeaChange to hold a

Facility Security Clearance at the SECERT Level (FCL):

> C-8.1 Security Classification Specification. The Owner shall comply with all administrative requirements, including the necessary investigative actions required by the Government to obtain a Government Facility clearance. Further, corporate officers as well as the Vessel's Master, Chief Mate, Chief Engineer, and at a minimum, one (1) additional officer (deck or engineering) shall be cleared to receive classified information up to and including SECRET. See DD-254, "Contract Security Classification Specification", Attachment G, for other security requirements.

17

> C-8.1.1 Facility Security Clearance. *The Owner is required to have a facility clearance up to SECRET level* with a GSA approved Class 6 document safe that has an approved electronic combination locking device and approved shredder in accordance with DoD 5220.22-M National Industrial Security Program  operating Manual (NISPOM). It is the Owner's responsibility to submit requests for security clearances in the proper format and in a timely manner prior to assignment to the program based on Defense Security Service (DSS) guidance.

(Emphasis added).

12.     Pursuant to Section C-8.1.1, Counter-Defendant SeaChange was required to obtain a FCL in order to perform the Contract.

13.     The contractual requirement to obtain a FCL was the sole responsibility of Counter-Defendant SeaChange.

14.     Obtaining a FCL was a material requirement of the Contract.

15.     Beyond submitting a letter to DSS sponsoring SeaChange for a FCL, the Contract did not require MSC to facilitate or assist Counter-Defendant SeaChange with obtaining a FCL.

16.     Furthermore, the Contract incorporates FAR clause 52.249-8, Default (Fixed-Price Supply & Service) (Apr 1984), which provides in relevant part:

> (a) (1) The Government may, subject to paragraphs (c) and (d) of this clause, by written notice of default to the Contractor, terminate this contract in whole or in part if the Contractor fails to-
>
> (i) Deliver the supplies or to perform the services within the time specified in this contract or any extension;
>
> (ii) Make progress, so as to endanger performance of this contract (but see subparagraph (a) (2) of this clause); or

18

(iii) Perform any of the other provisions of this contract (but see subparagraph (a) (2) of this clause).

. . .

17.     The request for proposals related to the Contract included a Form DD 254, which indicated the Contractor will require access to communications security (COMSEC) equipment and classified information at the Contractor's facility.  As referenced in the DD 254, Department of Defense (DoD) 5520.22-M, National Industrial Security Program Operating Manual (NISPOM), offered guidance on DoD security clearances, including FCLs.

18.     As early as April 8, 2014, MSC issued a letter to SeaChange raising concerns about SeaChange's inadequate performance of the Contract.  One of the concerns addressed was SeaChange's admitted inability to meet the laydays required under the Contract as awarded.  Moreover, the letter requested a Plan of Action and Milestones for the Vessel detailing the shipyard work that still had to be done and a timeline for SeaChange to obtain the contractual required FCL.

19.     SeaChange was advised by MSC employees that obtaining the FCL could take significant time and that SeaChange should consult a third-party familiar with the FCL process to offer assistance.

20.     In fact, SeaChange's Designated Agent informed MSC that SeaChange was working with an expert on the FCL process from Tote Services (Tote).

21.     SeaChange encountered multiple issues with the United States Coast Guard during the contractually required reflagging of the Vessel to a United States ship.

22.     Due to SeaChange's inability to perform the Contract as awarded,

numerous modifications to the Contract were required.

23.     On July 22, 2014, MSC issued a Cure Notice due to SeaChange's failure to

make adequate progress in accordance with FAR 52.249-8.  The Vessel failed to timely

meet several United States Coast Guard requirements, most notably not receiving its

Certificate of Inspection (COI).  The Cure Notice also addressed concerns MSC had with

SeaChange's progress on obtaining a FCL.  The letter gives further notice of MSC's right

to terminate the Contract for default should SeaChange fail to meet its obligations.

24.     On July 31, 2014, MSC issued another Cure Notice notifying SeaChange

that the Contract would not be terminated for default, even though it had failed once

again to meet its contractually required layday.  The Notice gave SeaChange until August

4, 2014, to deliver the Vessel before the United States would exercise its right to

terminate the contract for default.  This letter also addressed the Vessel's numerous

outstanding Coast Guard and contract deficiencies.

25.     SeaChange failed to deliver the Vessel on August 4, 2014.

26.     The Vessel was delivered to MSC at the Military Ocean Terminal Sunny

Point (MOTSU) on August 8, 2014.

27.     The Vessel began being loaded with military cargo on or about August 13,

2014.

28.     On or about August 12, 2014, SeaChange notified MSC of the company's

continued issues with obtaining the contractual required FCL.  Concerned with

SeaChange's chronic inability to perform the Contract, MSC's Security Manager contacted DSS.

29.    DSS explained that SeaChange had Foreign Ownership, Control, or Influence (FOCI) concerns that made SeaChange ineligible for a facility security clearance at that time.  DSS explained that SeaChange could attempt to restructure its company or could submit a Special Security Agreement (SSA).  DSS noted that the SSA process would take several months.

30.    MSC issued a Show Cause letter on August 22, 2014.  The letter demanded SeaChange show cause why it should not be terminated for default for failure to obtain the FCL.  Specifically, the letter noted that without a FCL SeaChange could not receive classified information necessary for sailing the Vessel.

31.    Discussions between SeaChange and MSC took place from August 22, 2014 to August 27, 2014.  During those discussions, MSC conveyed all of the information it learned from DSS to SeaChange.  In response, SeaChange proposed ideas that failed to meet delivery requirements, security requirements, or both.  The unacceptability of SeaChange's proposals was explained to the company's representatives.

32.    On September 3, 2014, representatives from SeaChange, MSC, the United States Air Force, and DSS met to discuss possible solutions to SeaChange's inability to obtain the contractually required FCL.

21

33.     On September 4, 2014, SeaChange submitted a proposed plan to move forward with the Contract although it could not obtain a FCL.  The proposal, however, was inadequate for several reasons that were thoroughly explained to SeaChange.

34.     On September 5, 2014, the Coast Guard notified MSC that the Vessel could not sit loaded in port and must either sail by September 8, 2014, or MSC must commence offloading by September 9, 2014.

35.     On September 9, 2014, MSC terminated the Contract for default in accordance with FAR 52.249-8.  The Termination Letter is attached as Exhibit B.

36.     SeaChange's failure to obtain a FCL in accordance with Section C-8.1.1 of the Contract required the termination.  Furthermore, the Vessel's inability to sail in furtherance of the Contract breached Sections C-3.1, C-3.2, and C-3.2.1.

37.     The offloading of the Vessel began on or around September 11, 2014.

38.     On January 29, 2015, the Contracting Officer issued a Demand Letter asserting damages against SeaChange for $1,238,300.91, which is attached to the Counterclaim as Exhibit C.

39.     On February 27, 2015, the Contracting Officer issued a Final Decision on the excess reprocurement costs resulting from SeaChange's breach of the Contract totaling $1,238,300.91, which is attached to the Counterclaim as Exhibit D.

## COUNT I-DECLARATION THAT MSC WAS JUSTIFIED IN TERMINATING THE CONTRACT FOR DEFAULT

40.     The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph.

41.     Pursuant to Section C-8.1.1, Counter-Defendant SeaChange was required to obtain a FCL in order to perform the Contract.

42.     The contractual requirement to obtain a FCL was the sole responsibility of Counter-Defendant SeaChange.

43.     Counter-Defendant SeaChange failed to mitigate its FOCI issues and was unable to obtain a FCL in the timeframe required to perform the Contract.

44.     As a result of Counter-Defendant SeaChange's failure to obtain a FCL, it breached a material requirement of the Contract.

45.     The United States is entitled to a declaration from this Court that the Termination for Default was proper and justified.  The United States is further entitled to a declaration that Counter-Defendant SeaChange is liable for all the damages resulting from its termination.

## COUNT II-BREACH OF CONTRACT

46.     The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph.

47.     Pursuant to Section C-8.1.1, Counter-Defendant SeaChange was required to obtain a FCL in order to perform the Contract.

48.     The contractual requirement to obtain a FCL was the sole responsibility of Counter-Defendant SeaChange.

49.     Counter-Defendant SeaChange failed to mitigate its FOCI issues and was unable to obtain a FCL in the timeframe required to perform the Contract.

50.     As a result of Counter-Defendant SeaChange's failure to obtain a FCL, it breached a material requirement of the Contract.

51.     Counter-Defendant SeaChange is liable for all the damages suffered by the United States as a consequence of the breach.

## DAMAGES

52.     As a result of SeaChange's material breach of the Contract, MSC sustained damages of not less than $1,238,300.91 for excess reprocurement costs.

WHEREFORE, the United States prays:

1.     That Declaratory Judgment be entered in favor of the United States finding that MSC properly and justifiably terminated the Contract with Counter-Defendant SeaChange for default;

2.     That judgment be entered in favor of the United States against Counter-Defendant in an amount of at least $1,238,300.91, or a greater sum as may be proven, plus interest and costs;

3.     That the United States be awarded further relief as the Court may deem just and proper.

Date:  June 10, 2015                          Respectfully submitted,


                                              BENJAMIN C. MIZER
                                              Principal Assistant Attorney General

                                              CHARLES M. OBERLY III
                                              United States Attorney

                                              JENNIFER WELSH
                                              Assistant United States Attorney


                                              */s/Douglas M. Hottle*
                                              DOUGLAS M. HOTTLE
                                              Senior Trial Counsel
                                              JESSICA L. McCLELLAN
                                              BENJAMIN R. SWEENEY
                                              Trial Attorneys
                                              United States Department of Justice
                                              1425 New York Ave, NW
                                              Washington, DC 20005
                                              (202) 616-2973 (DMH)
                                              (202) 616-4054 (ESJ)
                                              (202) 616-4041 (BRS)
                                              (202) 616-4002 (fax)
                                              douglas.hottle@usdoj.gov
                                              Jessica.l.mcclellan@usdoj.gov
                                              benjamin.r.sweeney@usdoj.gov

                                              Attorneys for the United States

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 10, 2015, the United States of America's

Answer to Plaintiffs Second Amended Complaint and Counterclaim was served on all

counsel of record via CM/ECF.


*/s/Benjamin R. Sweeney*
BENJAMIN R. SWEENEY
Trial Attorney
United States Department of Justice
1425 New York Ave, NW
Washington, DC 20005
(202) 616-4041 (phone)
(202) 616-4002 (fax)
benjamin.r.sweeney@usdoj.gov

Attorney for the United States

26