**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SEACHANGE PROJECTS LLC, | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 1:14-CV-01186-GMS |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**SUPPLEMENTAL EXHIBIT F TO PRETRIAL ORDER**

An itemized statement of special damages.

**SeaChange Projects**

1. Outstanding Invoices

   a. SeaChange delivered the Vessel to MSC, and MSC accepted the Vessel on charter. As a result, SeaChange was entitled to a Delivery Bonus under the Contract of $950,000.

   b. The Vessel was "on hire" to MSC for 3 periods after acceptance. Under the Contract, MSC was required to pay a daily rate of hire and to reimburse the costs of port services (tugs, pilots, etc.) and fuel. SeaChange presented invoices to MSC, which have gone unpaid, in the following amounts:

   | | |
   |---|---|
   | First Hire Period | $ 420,000.00 |
   | Second Hire Period | $ 448,000.00 |
   | Third Hire Period | $ 308,000.00 |
   | Port Costs | $   40,142.74 |
   | Fuel (Bunker) Costs (net) | $ 132,335.28 |
   | | $1,348,478.02 |

2. Cancellation Fee

   The Contract required payment by the USA to SeaChange of a Cancellation Fee if the Contract was Terminated for Convenience. The Contract was terminated by MSC. Since SeaChange should not have been terminated for default, the Cancellation Fee is due and owing to SeaChange. The USA agrees that SeaChange expended funds in preparing and delivering the Vessel in excess of the maximum amount of the fee set forth in the Contract. The amount of the fee is $2,899,880.

3.   Breach of Contract

As a result of the wrongful Termination for Default issued by MSC, and its consequent refusal to pay the amounts owed to SeaChange, including the Cancellation Fee, SeaChange was forced to sell the Vessel in a distressed sale transaction. The difference between the value of the Vessel (per the opinion of expert witness Arlie G. Sterling, Ph.D.) ($12,357,710.35) and the sales price ($7,960,000) is $4,397,710.35. This is the amount of damages to be added to Items 1 and 2 above as a result of the USA's breach.

4.   Quantum Meruit

If, as an alternative to the above, the Court should find that no actual contract had been formed between the parties, damages should be awarded to SeaChange based upon the benefit realized by USA as a consequence of SeaChange's efforts to perform, which ultimately resulted in the use of SeaChange's Vessel by the second-low bidder. This is a total of $11,905,013.94, calculated as follows:

| | | |
|---|---|---|
| a. | Unpaid Periods of Hire | $ 1,176,000.00 |
| b. | Unreimbursed Expenses | $    172,477.94 |
| c. | Savings of Hire | $ 1,563,907.00 |
| d. | Savings on fuel | $ 8,042,569.00 |
| e. | Unpaid Delivery Bonus | 950,000.00 |
| | | $11,905,013.94 |

**United States**

The United States incurred additional expenses in the amount of $1,263,961.56 with respect to reprocurement for the required services resulting from the termination for default of contract N00033-14-C-3300. This amount is comprised of the following:

- Offload and reload stevedoring expenses in the amount of $1,234,606.03;

- Military Ocean Terminal, Sunny Point (MOTSU) Overtime from 11-29 September 2014 due to cargo discharge and reloading in the amount of $14,996.74;

- Military Sealift Command information technology personnel to un-install/reinstall PPTS communications equipment on 18-19/29-30 September 2014 in the amount of $815.63; and

- United States Air Force personnel travel to MOTSU 15 September -1 October 2014 for the purpose of reloading the vessel with cargo in the amount of $13,543.16.